## TISMER v. NEW YORK EDISON CO.

(Supreme Court, Appellate Division, First Department.    December 3, 1915.)

1. ELECTRICITY ⊜⟲11—RIGHTS OF COMPANY SUPPLYING ELECTRICITY—STATUTORY PROVISIONS.

Transportation Corporations Law (Consol. Laws, c. 63) § 62, provides that, upon application in writing by the owner or occupant of any building or premises within 100 feet of the wires of any electric light corporation, the corporation shall supply electric light as may be required for lighting such building or premises, and that if it shall refuse or neglect to do so it shall forfeit and pay $10, and the further sum of $5 for every day during which such refusal or neglect shall continue. *Held*, that while the statute, if read literally, makes it the unqualified duty of the company to furnish electric current upon application, it is the company's right and duty to make reasonable rules and regulations to assure the sufficiency and safety of the equipment within the building to which the current is to be supplied, and it was a reasonable condition of a contract between an electric light company and an applicant for electricity that before current was supplied his equipment should be approved by the constituted authorities and by the company.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. ⊜⟲11.]

2. ELECTRICITY ⊜⟲11—RIGHTS OF COMPANY SUPPLYING ELECTRICITY—STATUTORY PROVISIONS.

It was lawful and reasonable for an electric light company to require that a party applying for a supply of electricity should furnish a certificate of the board of fire underwriters as to the sufficiency and safety of his wiring and equipment, and it was immaterial that such board charged a fee of $2.50 for such certificate, as the company had a right to make its own inspection, or to determine whose examination and approval would be satisfactory to it, and, if it made the inspection itself, was entitled to make a reasonable charge for such service.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. ⊜⟲11.]

Appeal from Trial Term, New York County.

Action by Paul G. Tismer against the New York Edison Company. From a judgment entered by direction of the court, and from an order denying a motion for a new trial, defendant appeals. Reversed, and complaint dismissed.

See, also, 157 App. Div. 910, 142 N. Y. Supp. 1147.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and SMITH, JJ.

Thomas H. Beardsley, of New York City, for appellant.

Abraham Tulin and Howard E. Brown, both of New York City, for respondent.

SCOTT, J.    The plaintiff has recovered a judgment for a large sum of money for penalties for defendant's refusal to furnish electric current on demand. The act under which the penalties are claimed is section 62 of the Transportation Corporations Law (Laws 1909, c. 219, being chapter 63 of the Consolidated Laws). That section provides that gas and electric light must be furnished, upon application, to the owner or occupant of any building within 100 feet of any gas main or electric trunk line, and that upon refusal so to do a penalty shall be

⊜⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

incurred in the sum of $10 and the further sum of $5 for every day during which such refusal or neglect shall continue.

The plaintiff, who was an electrical contractor, fitted up a part of the building No. 63 Grand street, in the city of New York, for carrying on that business. He himself arranged the interior wiring and equipment, and on January 27, 1908, made a written application to defendant for electrical current, using for that purpose a blank form prepared and issued by it. This application was accepted by the defendant on February 1, 1908, and thereupon became the contract between the parties. The only clause contained in it which has any bearing upon this appeal is one to the effect that:

"The company shall not be required to supply current hereunder until the equipment shall have been approved by the constituted authorities and by the company."

Before making this application to the defendant, plaintiff had notified the city department of water supply, gas, and electricity and the board of fire underwriters that he was about to apply to be supplied with electrical current. Inspectors from both of these bodies inspected the equipment and made certain objections, which plaintiff says he met. On February 18th the city department issued its certificate of approval, and on the same day the board of fire underwriters notified plaintiff that its certificate was ready and would be forwarded on payment of the sum of $2.50. Plaintiff mailed both of these documents to defendant. Meanwhile, and on February 13th, defendant had installed a meter in plaintiff's premises. Some one, presumably defendant, although the fact is not clearly established, connected the plaintiff's equipment with defendant's wires, and current was supplied until July 13th, when it was cut off by defendant's workmen. The reason that the service of the current was discontinued was that plaintiff had never received the certificate of approval from the board of fire underwriters, which defendant insisted upon as a condition of continuing the service, and defendant had been notified on said July 13th, by an inspector of the board of fire underwriters that:

"Somewhat recent inspection of the installation indicates that the wiring is not only in violation of our rules, but is in unsafe condition."

The case contains considerable correspondence between plaintiff and defendant, the general purport of which is that defendant insisted that plaintiff should procure from the board of fire underwriters a certificate as to the safety and sufficiency of plaintiff's electrical equipment, while the latter refused to pay the fee of $2.50 demanded by the board of fire underwriters for the issuance of such certificate. In September plaintiff, having made some changes in his equipment and having again obtained the approval of the department of water supply, gas, and electricity, made another application to be supplied with electric current, which was refused. It does not appear that on this occasion he applied to the board of fire underwriters for a certificate. At all events he received none and furnished none to defendant.

At the close of the evidence a verdict was directed in favor of the plaintiff, the court denying a request by defendant that the case be

sent to the jury "on the question whether or not the defendant's requirements that the plaintiff obtain a certificate from the New York board of fire underwriters as to the safety and sufficiency of his interior wirings and appliances was reasonable and proper." It is evident that the court refused this request because it was of the opinion that no question of reasonableness entered into the case, for evidence offered by defendant having a bearing upon that question had been uniformly excluded.

[1] If this opinion was entertained by the court, it was erroneous. It is true that the statute creating penalties, if read literally, makes it the unqualified duty of defendant to furnish electrical current upon application; but there must be read into the statute the right and duty to make reasonable rules and regulations to assure the sufficiency and safety of the equipment within the building to which the current is to be supplied. This duty was declared, with much emphasis, by the Court of Appeals in Schmeer v. Gaslight Co., 147 N. Y. 529–536, 42 N. E. 202, 203 (30 L. R. A. 653). Speaking of the defendant in that case, the court said:

"It was by statute bound to furnish gas upon the written application of the owner or occupant of any building or premises within one hundred feet of any main laid down by it, *subject to such just and proper regulations* as it might adopt as a means of securing payment for its gas and *safety in its supply.*"

The act in force when this decision was made was Laws 1890, c. 566, section 65 of which was in the same form as the law now in force. In neither is there any specific provision for regulations to secure safety in the supply. Consequently the duty thus declared to rest upon the company was found by the Court of Appeals to be necessarily implied. The case in which the opinion quoted was written related to the duty of a gas company under the statute, and the right and duty of the company to enforce reasonable regulations to insure the safety of its supply was declared, as the opinion shows, from the known danger from escaping gas in the case of defective gas fixtures. The danger from electricity is at least as great as that from gas, and the case above cited is authority for the proposition that it is the right and duty of an electric light company, before delivering electricity to a customer, to take reasonable precautions to be assured that the private equipment within the building to which the electricity is to be delivered is adequate and safe. Indeed, it would appear from the case just cited that a gas or electric company might incur heavy responsibility if it failed to take steps to assure itself of the sufficiency and safety of the interior equipment to which it was about to deliver current. We think, therefore, that it must be taken as settled that such a company may reasonably insist upon such assurance before its statutory duty to furnish gas or electricity attaches, and therefore the clause in the contract between plaintiff and defendant to the effect that before supplying current the plaintiff's equipment "shall have been approved by the constituted authorities and *by the company*" is a reasonable condition.

[2] There was therefore involved in the controversy a question as to the reasonableness of defendant's insistence upon a certificate from

the board of fire underwriters before it would supply or continue to supply current to plaintiff. Such a question is sometimes one of fact, and sometimes one of law. In the present case the question rests upon no disputed fact and is one of law. We say that there is no disputed fact, because we assume, for the purpose of this appeal, as plaintiff claims, that the sole reason why defendant refused to furnish electricity was that plaintiff failed to procure from the board of fire underwriters a certificate of the sufficiency and safety of his equipment, and that the sole reason why plaintiff could not and did not procure such certificate was that he refused to pay the fee of $2.50 demanded by the board.

To satisfy itself of the sufficiency and safety of plaintiff's equipment, defendant had undoubtedly a right to insist upon an examination of that equipment before turning on the current. This right it might properly do by its own employés, or it might appoint an agent to do it, or it might accept the result of an examination by any person in whom it had confidence. It was the party to be satisfied, and it had a right to determine whose examination and approval would be satisfactory to it. It was not bound to make the examination by its own employés. Schmeer v. Gaslight Co., supra, 147 N. Y. 539, 42 N. E. 202, 30 L. R. A. 653. It selected the board of fire underwriters as the body whose examination and certificate would be satisfactory and acceptable to it. In so doing it acted strictly within its rights, and with much good judgment, because fire is the most usual result of defective wiring, and the fire underwriters are the persons most interested in seeing to it that electricity is not furnished to a defective equipment. It was therefore, in our opinion, both lawful and reasonable for the defendant to refuse to furnish current without the production of a certificate from the board of fire underwriters.

But plaintiff contends it was unreasonable to insist upon the production of this certificate, because it could not be obtained without the payment of a fee to the board. This objection does not impress us as a serious one. If defendant had elected itself to inspect the plaintiff's equipment, it would have been required to hire and pay a trained expert for that purpose, and we are aware of no statute or rule of law which would have forbidden it to make a reasonable charge for that service. The rate which a gas or electric light company may charge for the current which it furnishes is prescribed by law; but that rate covers only the supplying of the current, and does not cover the expense of a preliminary inspection for safety. The right and duty of preliminary inspection when one is dealing with so dangerous a commodity as electricity is not alone for the benefit of the company supplying the current, but is a public duty, which should not be neglected. If the company itself could lawfully exact reasonable compensation for making a preliminary examination, the agency which it selects and relies upon to satisfy it as to the sufficiency of the equipment may likewise make such a charge, and so long as that charge is not unreasonable (and it is not claimed that it was in this case) it would be most unjust and improper to compel defendant to take the risk of supplying electrical current to an uninspected and uncertified equipment.

We are therefore of the opinion that defendant's insistence that it should be satisfied of the safety and sufficiency of plaintiff's equipment by the inspection and certificate of the board of fire underwriters was reasonable, and that the fact that such a certificate could not be procured without the payment of a small and reasonable fee did not require defendant to furnish current in the absence of such a certificate. If this be so, defendant was not liable for the penalties prescribed by the statute. Other questions have been discussed at length in the briefs, but in the view we take of the case we do not find it necessary to consider them.

The judgment and order appealed from are reversed, with costs and disbursements, and the complaint dismissed, with costs; the finding that defendant had unlawfully refused to furnish electric current to plaintiff on demand being also reversed. All concur.