TEN TEN LINCOLN PLACE, INC., Plaintiff, *v.* CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Defendant.

Supreme Court, Special Term, Kings County, July 22, 1947.

*Whitman, Ransom, Coulson & Goetz* for defendant.

*Morway Picket* and *Harold J. Treanor* for plaintiff.

POWERS, J. Plaintiff owns a multitenanted apartment house in the borough of Brooklyn and is a customer of the defendant for electricity used for public light and power, i.e., for operating elevators, hall lights and other general building purposes. The defendant supplies electric service through individual meters directly to the residential tenants in the apartment house at the residential rates set forth in Service Classification No. 1 — Residential of the defendant's electric rate schadule. Under date of December 18, 1946, the plaintiff informed the defendant that the plaintiff desired to submeter electricity to its tenants, i.e., to purchase electricity from the defendant at wholesale rates and resell to its tenants their requirements at retail rates, and requested a new contract with the defendant to effectuate this arrangement. Under date of December 27, 1946, the defendant informed the plaintiff by letter that, under its rate schedule, defendant's electric service would be supplied to residential premises in the borough of Brooklyn only on condition that such service was for the customer's own use and not for resale or submetering to others.

In this action, plaintiff attacks the legality of the provisions in the various service classifications contained in the defendant's rate schedule under which the defendant supplies electric service only for a customer's own use and not for resale and submetering by such customer for the use of others.

This attack is based upon a comparison of the provisions relating to resale and submetering contained in various of the rates and the classifications in the defendant's rate schedule and is embodied in allegations that, under the terms and provisions of those classifications, the defendant (a) extends more favorable treatment to apartment house owners in the boroughs of Manhattan and The Bronx, where submetering is permitted, than to apartment house owners in the boroughs of Brooklyn and Queens, where submetering is not permitted; (b) extends more favorable treatment to owners of industrial and commercial buildings in all boroughs than to apartment house owners in the boroughs of Brooklyn and Queens, and (c) accords different treatment to apartment house owners who submeter and resell electricity to their tenants and to apartment house owners who furnish electricity to their tenants without specific charge therefor separate from the rent.

The gravamen of plaintiff's nine alleged causes of action is unlawful discrimination, in the respects above indicated, between the owners of multitenanted buildings. Plaintiff seeks a declaratory judgment that such discrimination violates obligations, duties and liabilities imposed upon the defendant by the common law, the Public Service Law and the Federal and State Constitutions.

Defendant's answer admits that the plaintiff is a customer of the defendant for electric service for general building uses at the premises in question and that defendant supplies electric service to apartment house owners and their customers throughout its territory under and pursuant to the terms and conditions of the service classifications mentioned in the complaint, but the answer otherwise denies generally the allegations of the complaint.

The answer also sets forth four separate and distinct defenses to each of the nine alleged causes of action and a fifth defense to the first and fourth alleged causes of action.

Defendant moves to dismiss the complaint upon the ground that the court has not jurisdiction of the subject of the action; that the court should decline jurisdiction of the subject of the action; that the complaint does not state facts sufficient to constitute a cause of action; that the court in the exercise of its

discretion should decline to pronounce a declaratory judgment in this action; and under rule 113 of the Rules of Civil Practice on the ground that the defenses, including the denials, are founded on facts established prima facie by documentary evidence or official records and are sufficient as a matter of law to establish that plaintiff's action has no merit.

Plaintiff has no right at common law to sue for the relief herein sought for the reason that the statute creating the Public Service Commission was intended to supersede all common-law remedies. (*Purcell* v. *New York Central R. R. Co.*, 268 N. Y. 164.) There the court said at page 171: "The statute creating the Public Service Commission and empowering it to supervise rates and charges was intended to cover the whole subject of rates and supersede all common law remedies."

Nor has plaintiff any vested right to utility service or to any particular rate except to the extent that the Public Service Law grants it such right; and it is not entitled to invoke its constitutional guaranties of "due process" or "equal protection" under such circumstances. (*United States Light & Heat Corp.* v. *Niagara Falls G. & E. L. Co.*, 47 F. 2d 567.) There the court said at pages 569–570: "Except for this provision of law, there is no duty or obligation on the part of the gas company to furnish service to any applicant. *Tismer* v. *N. Y. Edison Co.*, 170 App. Div. 647, 156 N. Y. S. 28; *People ex rel. N. Y. Edison Co.* v. *Public Service Comm.*, 191 App. Div. 237, 181 N. Y. S. 259, affirmed 230 N. Y. 574, 130 N. E. 899. * * * A consumer or prospective consumer of gas in the territory has only such right as the Public Service Law gives him to complain of charges or service. As a general rule, a seller may fix the price of his product at what he pleases or dispose of it at any price, but the courts have determined that, where property is affected with a public interest, it is no longer juris privati; it becomes clothed with a public interest when used and sold in a community under a franchise grant. Thus the gas company's business becomes subject to the Public Service Law by reason of the interest which the public has. It must submit to the control by the Public Service Commission for the common good to the extent which it has clothed its property with public interest. But a citizen has no vested rights in statutory privileges or exemption. Cooley, Constitutional Limitations (8th Ed.) 792. This gas company became bound to furnish gas within the city of Niagara Falls by reason of the Public Service Law. The consumer was not obliged to purchase gas; he was privileged to do so. A private right may be interfered with so long as it

is not vested (Cooley, Constitutional Limitations [8th Ed.] 749), and a right is not vested unless it is something more than a mere expectation as may be based upon an anticipated continuation of the present general laws (*Brooklyn Union Gas Co. v. City of New York,* 50 Misc. Rep. 450, 100 N. Y. S. 570). * * * The plaintiff and the intervener Hamann have no property rights which are affected by subdivision 6 of section 65 forbidding service charge. Their right to service exists only because of the statute referred to. It is not such property right as may form the basis of a claim for confiscation or discrimination. If there be an exercise of arbitrary power against the consumer and wrongful enforcement by the commission of the Public Service Law, a remedy is afforded under the provisions referred to for the consumer to lodge his complaint, obtain a hearing and redress. *City of Rochester v. Rochester Gas Co.,* 233 N. Y. 39, 134 N. E. 828.''

Of similar import is the case of *People ex rel. Pub. Service Comm. v. New York Telephone Co.* (262 App. Div. 440, affd. 287 N. Y. 803).

By article 4 of the Public Service Law the Public Service Commission was given general supervision and control over gas and electric corporations, their rates, policies and management. The pertinent provision of the Public Service Law with respect to rates is subdivision 14 of section 66, which provides that: '' 14. The commission shall have power to require each gas corporation and electric corporation to establish classifications of service based upon the quantity used, the time when used, the purpose for which used, the duration of use and upon any other reasonable consideration, and to establish in connection therewith just and reasonable graduated rates and charges; and it shall have power, either upon complaint or upon its own motion, to require such changes in such classifications, rates and charges as it shall determine to be just and reasonable. * * * ''

Subdivision 5 of section 65 of the Public Service Law provides: '' 5. Nothing in this chapter shall be taken to prohibit a gas corporation or electrical corporation from establishing classifications of service based upon the quantity used, the time when used, the purpose for which used, the duration of use or upon any other reasonable consideration, and providing schedules of just and reasonable graduated rates applicable thereto. No such classification, schedule, rate or charge shall be lawful unless it shall be filed with and approved by the commission, and every such classification, rate or charge shall be subject to change, alteration and modification by the commission.''

Pursuant to the above-quoted provisions, defendant has established classifications of service containing different rates, terms and conditions applicable to each of the methods of supplying electricity to tenants in multitenanted buildings. It is these classifications which the plaintiff challenges in this action. Our courts have held, however, that once such classifications and rate schedules for a utility service have been filed with the Public Service Commission they are presumed to be reasonable and must be attacked in the first instance before the Public Service Commission. (*People ex rel. Pub. Service Comm.* v. *New York Telephone Co.*, 262 App. Div. 440, affd. 287 N. Y. 803, *supra.*) There the Appellate Division said at page 444: " It is affirmatively required by statute that all telephone companies establish and file with the Public Service Commission schedules showing all rates, rentals and charges to be made for service of each and every kind by and over its lines in this State. (Public Service Law, § 92.) The New York Telephone Company has filed its tariff schedules with relation to hotel service. They are presumed to be reasonable, and must be attacked in the first instance before the Public Service Commission. (*Murray* v. *New York Telephone Company*, 170 App. Div. 17; affd. 226 N. Y. 590.) "

To the same effect see *Metzger* v. *New York State Railways* (168 App. Div. 187), *Matter of Earl Carrol R. Corp.* v. *New York Edison Co.* (141 Misc. 266), *City of New York* v. *New York Edison Co.* (196 App. Div. 644), *Ambassador, Inc.*, v. *United States* (325 U. S. 317) and, *Murray* v. *New York Telephone Co.* (170 App. Div. 17, affd. 226 N. Y. 590, *supra*). There the Appellate Division said at page 25: " As we held in *Metzger* v. *New York State Railways* (168 App. Div. 187), decided at the June, 1915, term, such conclusion has its foundation in the assumption that the filing of the tariffs in compliance with the requirements of the statute gives to those tariffs a presumption of fairness which is conclusive until the same are actually reformed or modified by the Commission."

The case of *Kovarsky* v. *Brooklyn Union Gas Co.* (279 N. Y. 304), relied upon by the plaintiff, is readily distinguishable from the one at bar. There no question as to the reasonableness of rates or charges was involved but rather only a question of law as to whether defendant had the right to impose a service charge which was specifically prohibited by statute.

I am in accord with the views expressed by the court in the case of *Croydon Syndicale, Inc.*, v. *Consolidated Edison Co. of N. Y.* (N. Y. L. J., May 21, 1947, p. 2002, col. 3). There under a

somewhat similar state of facts the court held that more than an issue of law was involved and that the question of whether differentials in rates established by the defendant were unreasonable and discriminatory was a matter which the Public Service Commission and not the court should resolve. So, also, in the present case I am of the opinion that the Public Service Commission is the proper tribunal to litigate the propriety of the rates charged by the defendant.

Defendant's motion to dismiss the complaint is granted for the reasons stated above. Submit order on notice.